**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **SERVICE JEWELRY REPAIR, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 3:14-cv-1901** |
| ) | **Judge Aleta A. Trauger** |
| ) | |
| **CUMULUS BROADCASTING, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

The defendant Cumulus Broadcasting, LLC ("Cumulus") has filed a Motion for

Summary Judgment (Docket No. 17), to which the plaintiff, Service Jewelry Repair, Inc.

("Service Jewelry"), has filed a Response in Opposition (Docket No. 22), and Cumulus has filed

a Reply (Docket No. 25). For the following reasons, the motion will be granted.

## FACTS AND PROCEDURAL HISTORY[1]

The plaintiff, Service Jewelry, is a jewelry sales and service company that serves the

Nashville area. It is a corporation organized under Tennessee law with its principal place of

business in Brentwood, Tennessee. Beginning in 2010 and lasting until 2014, Service Jewelry

promoted its products and services through on-air advertising on a local radio station, WWTN-

FM. Service Jewelry purchased this advertising from Cumulus, a Nevada limited liability

company that owns and manages several Nashville-area radio stations, including WWTN-FM,

---

[1] Unless otherwise noted, the facts recounted in this section are drawn primarily from
Cumulus's Statement of Undisputed Material Facts (Docket No. 19) and Service Jewelry's
response thereto (Docket No. 23). This section also contains facts from Cumulus's Motion for
Summary Judgment and Memorandum of Law in support thereof (Docket Nos. 17 and 18),
Service Jewelry's Response Memorandum (Docket No. 22), and Cumulus's Reply (Docket No.
25), that are not refuted or contradicted by the opposing party or the record.

and that sells advertising time to many Nashville-area businesses, including thirteen different jewelry sales and services companies. This action arises from a dispute over an on-air advertising campaign that Service Jewelry purchased from Cumulus and that ran from May 7, 2014 to July 17, 2014.

This advertising campaign was prompted by an investigative news report that aired on May 5, 2014 on WSMV-TV, the Nashville NBC-affiliated television station. The report questioned the manner in which a major competitor of Service Jewelry, Genesis Diamonds ("Genesis"), graded the quality of its diamond products. On May 6, 2014, the day after the investigative report aired, Service Jewelry's Chief Executive Officer, Mark Tornello, and Chief Financial Officer ("CFO"), Joe Townsend, met with Cumulus General Sales Manager Dave Elliott, Account Executive Mark Johnson, and WWTN radio personality Michael DelGiorno. Service Jewelry wanted to run a series of on-air advertisements highlighting the report and directing consumers to Service Jewelry for assistance if they had concerns regarding the quality of their diamonds. During the meeting, the five men discussed the content of the new advertising spots, which would include pre-recorded advertisements and live radio endorsements by Mr. DelGiorno.

With regard to the live endorsements, Service Jewelry provided Mr. DelGiorno with a list of talking points that were designed to capitalize upon the negative publicity Genesis had received as a result of the investigative report. The list included, among others, the following talking points:

1. If you missed the channel 4 investigation on purchasing diamonds, be sure to visit WSMV.com and view the report that they ran on May 5th and 6th.

2. Service Jewelry and repair (sic) does not sell EGL International diamonds. As you will see on the report, these diamonds are hugely overgraded.

3. Service Jewelry and repair (sic) has an independent GIA graduate

gemologist on staff.  We will offer his services to provide a free consultation, if anyone feels that they may have been misle[d] on their diamond purchase.  You must call Mark Tornello to schedule this consultation.

4. Service Jewelry and repair (sic) will give you an HONEST education when you purchase your diamond from us.

5. We will not be undersold on GIA and EGL USA certified diamonds.

6. When you walk out of Service Jewelry and repair (sic), you can rest assure (sic) that the diamond that you purchased is properly graded, based on GIA and EGL USA standards, which are different standards.  You will pay a premium for a GIA graded diamond.

. . .

9. We do not have an unlimited advertising budget.  In order for us to advertise as much as our competitor, think about how much we would have to mark up our diamonds in order to pay for advertising.  We prefer to save the customer as much as possible.

(Docket No. 23 ¶ 14.)  The talking points do not mention Genesis by name, but they do include references to the investigative report and to Service Jewelry's "competitor."  To better understand the context of these talking points, Mr. DelGiorno played a video of the investigative report on his cell phone during the meeting.  At no point did Mr. DelGiorno conduct an independent investigation into the truth or falsity of the allegations made about Genesis in the video, and at no point during the meeting did Service Jewelry ask Mr. DelGiorno or Cumulus to refrain from mentioning Genesis by name in the live endorsements.

Based upon this meeting and other communications between Cumulus and Service Jewelry, Cumulus prepared a standard Sales Order for the new advertising slots and an On Air Campaign form, both of which were executed by Service Jewelry.  The Sales Order was subject to Cumulus's "Standard Terms and Conditions," which include provisions regarding payment and billing, termination of the agreement, indemnification, and disputes regarding the Sales Order.  Neither the Sales Order, the Standard Terms and Conditions, nor the On Air Campaign

form contains any term or provision imposing contractual obligations on the content Cumulus

airs outside of the paid advertisements for Service Jewelry or requiring Cumulus to use only

language provided by Service Jewelry in the pre-recorded advertisements and live endorsements.

Between May 7, 2014 and July 17, 2014, Cumulus ran 70 on-air spots for Service

Jewelry, including a total of 16 live endorsements by Mr. DelGiorno. The first few live

endorsements discussed the investigative report, but they did not mention Genesis by name.  On

May 12, 2014, after several live endorsements had aired, Service Jewelry's CFO, Mr. Townsend,

emailed Mr. DelGiorno to thank him for his effort.  Mr. Townsend then wrote:

> Genesis, once again, is advertising that "if you find a certified diamond that is
> similar to ours for a cheaper price, we will give you ours for free."  We want to
> take this guy completely down for this.  I would like for you to add to your talking
> points, something to the effect, that we would like for anyone to take him up on
> this offer.

(Docket No. 17-2 (Decl. of M. DelGiorno), Ex. 3.)  Soon after receiving this email,

Mr. DelGiorno mentioned Genesis by name in four live endorsements for Service Jewelry, which

aired on May 21, 22, 23, and 27, 2014.

Genesis was one of the other jewelry sales and service companies that purchased

advertising time from Cumulus.  In mid-June 2014, a Genesis representative contacted Cumulus

regarding the live endorsements for Service Jewelry in which Mr. DelGiorno mentioned Genesis

by name.  Genesis requested that Cumulus air apologies for these endorsements, and Cumulus

agreed.  Two apologies were prepared, one by Cumulus and the other by Mr. DelGiorno, and

they were posted on WWTN-FM's website (the "Apologies").  The text of the Apologies is as

follows:

**Station Apology:**

> We at WTN want to apologize for some very negative and unfair comments about
> Genesis [D]iamonds made during a series of advertisements by our host, Michael
> DelGiorno.  Michael has apologized to the staff at Genesis for reading a

commercial by a competitor which included some very strong and disparaging comments. We are proud to be associated with Genesis Diamonds and hold them in the highest regard. Genesis has a strong and positive reputation – both in Nashville and in the jewelry industry nationwide. They have over 40-thousand satisfied customers, have been the official jeweler of the Tennessee Titans since 2006 and have been voted five straight years as The Best Place in Nashville to Buy an Engagement Ring. Indeed, Genesis is one of the most successful independent jewelry stores in America today. You don't get to that level without doing business the right way, with integrity, superior products and unmatched customer service. We wish them years of continued success.

**Mr. DelGiorno's Apology:**

Hi, it's Michael Del[G]iorno . . . here to offer a sincere apology to the owner, staff, [and] the customers of Genesis Diamonds, as well as to my fellow hosts and management. Back in May, I did some commercials for another jeweler in town in which I mentioned Genesis Diamonds and made some pretty negative statements and serious allegations about their company. To be honest, I did not do my own investigation about Genesis. I was given some commercial copy by the other jeweler and I relied entirely on the information provided in doing the commercials. In some of the commercials for the other jeweler, my statements may have been pretty derogatory and unfair to Genesis Diamonds – and I am sorry about that. I should never have made such serious comments about another business in town, especially without doing my own homework. So, to Mr. Boaz Ramon, the employees of Genesis Diamonds, their customers and my fellow hosts and management I apologize – for making statements about Genesis Diamonds that I did not know were untrue or unfair. I am truly sorry.

(Docket No. 17-3 (Decl. D. Elliott), Ex. 5.) Additionally, a substantially similar version of

Mr. DelGiorno's apology was read by Mr. DelGiorno and aired on the station fourteen times

from June 20, 2014 to June 25, 2014, roughly a month after the live endorsements naming

Genesis were aired.[2] Meanwhile, WWTN-FM continued to air other advertisements for Service

Jewelry that did not refer to Genesis until July 17, 2014, when Service Jewelry cancelled all of

its advertising business with Cumulus. At the time, Service Jewelry had been invoiced

$12,899.98 for the advertising that ran until its cancellation of service, which Service Jewelry

---

[2] In all relevant respects, the language is the same between the version of the apology posted on the station's website and the version read by Mr. DelGiorno and aired on the station. (*Compare* Docket No. 17-2 (Decl. M. DelGiorno), Ex. 4 (transcription), *with* Docket No. 17-3 (Decl. D. Elliott), Ex. 5 (website).)

has never paid.

## I.    <u>Procedural History</u>

On August 25, 2014, Service Jewelry filed suit against Cumulus in the Circuit Court of Davidson County, Tennessee, alleging that, in airing the Apologies, Cumulus spread "defaming, disparaging, and [] false and damaging statements about Service Jewelry at the request of a competitor . . . ."  (Docket No. 1, Ex. A ¶ 4.)  Service Jewelry brought the following claims against Cumulus: (1) breach of contract; (2) defamation; (3) violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code. Ann. § 47-18-101 *et seq.*; and (4) violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*  (*Id.* at Ex. A ¶¶ 28–51.)  Service Jewelry requested actual and punitive damages, treble damages under the TCPA, attorneys' fees, the costs of the action, and pre- and post-judgment interest.  (*Id.* at Ex. A, at pp. 13–14.)

On September 24, 2014, Cumulus removed the suit to this court on the grounds that both federal question jurisdiction and diversity of citizenship exist.  (*Id.* ¶¶ 3–4.)  A few months later, Service Jewelry filed an Amended Complaint (the "Complaint"), which contains the same factual allegations, brings the same claims, and requests the same relief as the original complaint.[3]  (Docket No. 9.)  Cumulus answered the Complaint on December 5, 2014.  (Docket No. 15.)

The parties have undertaken minimal discovery in this action.  Before the expiration of the discovery deadline on June 3, 2015, the parties exchanged initial disclosures under Federal

---

[3] The only difference between the original Complaint and the Amended Complaint is the named defendant.  (*Compare* Docket No. 1, Ex. A, *with* Docket No. 9.)  Service Jewelry initially named Cumulus Media, Inc. ("CMI") as the defendant in this action.  (Docket No. 1, Ex. A.) CMI denied in its Answer, however, that it "own[ed] or manage[d] the day-to-day operations" of WWTN-FM, averring that the station was actually owned and operated by CMI's subsidiary, Cumulus Broadcasting LLC.  (Docket No. 7 ¶ 6.)  After CMI filed its Answer, Service Jewelry amended the complaint to name Cumulus Broadcasting LLC as defendant.  (Docket No. 9.)

Rule of Civil Procedure 26 and written requests for the production of documents. Neither

Service Jewelry nor Cumulus took any depositions before the close of discovery, and the parties

did not seek an extension of the discovery deadline or trial date. In its initial disclosures, Service

Jewelry identifies as witnesses "likely to have discoverable information that may support

[Service Jewelry's] claims" only the five men present at the May 6, 2014 meeting (Mark

Tornello, Joe Townsend, Dave Elliott, Mark Johnson, and Michael DelGiorno), an employee of

Cumulus (Mike Carpenter), and the owner of Genesis (Boaz Ramon). (Docket No. 17-1 (Initial

Disclosures) ¶ 1.) Service Jewelry's initial disclosures do not identify any experts or consumers

as witnesses. Service Jewelry's initial disclosures also identify the following items in Service

Jewelry's possession or control that it "may use to support [its] claims": (1) a series of emails

between Mr. DelGiorno and Service Jewelry in late June 2014, (2) digital audio recordings of the

Apologies, and (3) a video of the investigative report. (*Id.* ¶ 2.) Service Jewelry's initial

disclosures do not, however, identify any financial records, calculations of damages, market

reports, or consumer surveys that Service Jewelry could use to support its claims against

Cumulus. The initial disclosures further state that, as a result of the Apologies, Service Jewelry

suffered damages in the amount of (1) $250,000 for loss of reputation and business goodwill,

(2) $20,000 in attorneys' fees, and (3) an "unknown" amount in lost revenue. (*Id.* ¶ 3.)

On June 10, 2015, one week after the discovery deadline expired, Cumulus filed a

Motion for Summary Judgment (Docket No. 17), along with a supporting Memorandum of Law

(Docket No. 18), attaching a copy of Service Jewelry's initial disclosures, the Declaration of Mr.

DelGiorno and accompanying exhibits, and the Declaration of Mr. Elliott and accompanying

exhibits (Docket Nos. 17-1, 17-2, and 17-3). Cumulus's motion argues, in part, that Service

Jewelry has no evidence, and could place no evidence in the record, of any damages resulting

from Cumulus's alleged misconduct.  (Docket No. 18, at pp. 11–12, 15–16.)  Service Jewelry

filed its Response on June 24, 2015 and attached the Declaration of Service Jewelry CFO, Joe

Townsend ("Townsend Declaration").  (Docket No. 22.)  Cumulus filed its Reply on June 30,

2015.  (Docket No. 25.)

The Townsend Declaration states that: (1) as a result of the Apologies, "Service Jewelry

was portrayed as a dishonest jeweler that resorts to false advertising and unfair attacks on its

competitors;" (2) "[r]eputation for honesty is of primary importance in the jewelry industry;" and

(3) that the Apologies "harmed Service Jewelry's reputation and standing in the community and

in the industry, . . . [leading] to actual financial damages, including significant costs and

expenses in attempting to set the record straight."  (Docket No. 22-1 (Decl. J. Townsend) ¶¶ 3–

5.)  The Townsend Declaration is the only document in the record speaking to Service Jewelry's

damages.  It provides no calculation of Service Jewelry's financial damages, costs, or expenses,

nor does the record contain any documentary or additional testimonial evidence supporting

Service Jewelry's claim of damages.  The record contains no consumer surveys or market

research demonstrating consumers' reaction to the Apologies, nor does Service Jewelry identify

any expert witness who could testify regarding the market impact of the Apologies or the

damages Service Jewelry has sustained.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary

judgment if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant

shows that there is no genuine issue of material fact as to at least one essential element of the

plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings,

"set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Service Jewelry brings claims against Cumulus for defamation and breach of contract under Tennessee common law, for violation of the TCPA, and for violation of the Lanham Act.

Service Jewelry's claim against Cumulus for violation of the Lanham Act is based on allegations that Cumulus made factual misrepresentations about Service Jewelry in the Apologies, namely that Service Jewelry "engages in false advertising about its business and competitors . . . ." (Docket No. 22, at p. 8.) Service Jewelry did not specify in the Complaint or clarify in its Response which section of the Lanham Act it claims that Cumulus has violated. As Cumulus notes in its briefing, however, the section of the Complaint discussing the alleged Lanham Act violation tracks the elements of a § 1125(a)(1)(B) claim (Docket No. 18, at p. 9 n.1), and the court is not aware of any other section of the Lanham Act that could provide relief

to Service Jewelry based on the facts alleged in the Complaint. The court will, therefore, construe Service Jewelry's Lanham Act claim as a claim for violation of § 1125(a)(1)(B).

Service Jewelry also did not specify in the Complaint or clarify in its Response which section of the TCPA Cumulus allegedly violated. As Cumulus points out in its briefing, the section of the Complaint discussing the alleged TCPA violation tracks the elements of a claim under § 47-18-104(b)(8) (Docket No. 18, at p. 12), and the court is not aware of any other section of the TCPA that could provide relief to Service Jewelry. Although the TCPA contains a "catch-all" provision prohibiting "any other act or practice which is deceptive to the consumer or to any other person," that specific provision is enforceable only by the Tennessee Attorney General's office. Tenn. Code Ann. § 47-18-104(b)(27). The court will, therefore, construe Service Jewelry's TCPA claim as a claim for violation of § 47-18-104(b)(8).

## I.    Claim for Violation of Section 1125(a)(1)(B) of the Lanham Act

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, is a federal statute that primarily addresses trademark rights, but it also prohibits unfair competition through the use of misrepresentations of fact about one's own or another's goods, services, or business activities. *See* 15 U.S.C. § 1125(a).[4] Service Jewelry has sued Cumulus for violation of § 1125(a)(1)(B) of the Lanham Act, arguing that Cumulus disseminated statements that misrepresented that Service Jewelry "engages in false advertising about its business and competitors . . . ." (Docket No. 22, at p. 8.)

---

[4] Section 1125(a)(1) actually creates two causes of action arising from "two distinct bases of liability": "false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014)." Section 1125(a)(1)(A) is not, however, relevant to Service Jewelry's Lanham Act claim. Service Jewelry has not alleged facts giving rise to a false association claim (also known as a "false designation" claim) under § 1125(a)(1)(A), which is typically brought in cases in which one party makes a false designation that is likely to cause confusion or to deceive a consumer as to the origin of that party's goods or services.

Section 1125(a)(1)(B) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which–
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be liable in a civil action by any
> person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). When a plaintiff seeks an award of monetary damages for false or
misleading advertising under the Lanham Act, as Service Jewelry does here, he must show
"either that the defendant's advertisement is literally false or that it is true yet misleading or
confusing." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric
Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999). Where statements are literally false, "a
violation may be established without evidence that the statements actually misled consumers."
*Id.* If the challenged advertising is "literally true, yet deceptive, or too ambiguous to support a
finding of literal falsity," however, "a violation can only be established by proof of actual
deception (*i.e.*, evidence that individual consumers perceived the advertisement in a way that
misled them about the plaintiff's product)." *Id.* It is the province of the court to determine
whether the statements are too ambiguous to be literally false. *Id.* at 615 n.2 ("[T]he initial
determination concerning whether a statement is ambiguous is a matter of law, while the
determination as to whether facts exist so as to justify the statement is a question of fact.").

### A. The Statements in the Apologies Were Not Literally False.

Reading the Complaint and Response in the light most favorable to the non-movant,
Service Jewelry appears to contend that the Apologies (1) falsely attribute Mr. DelGiorno's
statements about Genesis to Service Jewelry, and (2) falsely label those statements about Genesis

as "untrue," "unfair," "derogatory," and "disparaging," and thus – combined – misrepresent that Service Jewelry lied about Genesis. (*See* Docket No. 9 ¶¶ 21–24; Docket No. 22, at pp. 5, 8.)

Regarding Service Jewelry's contention that the Apologies falsely attribute Mr. DelGiorno's statements about Genesis to Service Jewelry, the court concludes that any such attribution in the Apologies is too ambiguous to be literally false. In particular, the Apologies referred to Mr. DelGiorno's "commercials for another jeweler in town" from May of 2014 who gave him "some commercial copy" containing the information on which he relied in commenting about Genesis, and also referred to "a commercial by a competitor" as the subject of the Apologies. (Docket No. 17-3 (Decl. D. Elliott), Ex. 5.) None of these statements are literally false. The Apologies do not actually attribute the content in the commercials that were the subject of the Apologies to the other jeweler referenced, nor do they name Service Jewelry as that "other jeweler." Interpreting the Apologies to mean that Service Jewelry, specifically, is the source of Mr. DelGiorno's statements about Genesis requires the listener to remember the identity of the advertising jeweler in advertisements aired a month previous and to infer that all negative statements were provided to Mr. DelGiorno by that jeweler and were not part of some unscripted content. Moreover, Mr. DelGiorno's statement that he "relied entirely" on the information in the commercial copy could be understood to have multiple meanings: it could mean that he read his statements directly from a script, or it could mean that he made the statements himself based on information contained in the copy. Additionally, "[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, . . . the less likely it is that a finding of literal falsity will be supported." *Fed. Express Corp. v. United Parcel Serv., Inc.*, 765 F. Supp. 2d 1011, 1017 (W.D. Tenn. 2010) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998));

*accord Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010) ("As the meaning of a statement becomes less clear, however, and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading."). Based on the ambiguity in the language and the degree to which the listener must integrate statements in the Apologies with prior knowledge of Service Jewelry's advertising, the court cannot conclude that the portions of the Apologies that allegedly attributed Mr. DelGiorno's statements about Genesis to Service Jewelry were literally false.

Regarding Service Jewelry's contention that the Apologies falsely label Mr. DelGiorno's statements about Genesis as "unfair," "derogatory," and "disparaging," the court concludes that these portions of the Apologies are not actionable under the Lanham Act because they are unverifiable statements of opinion. *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 614 ("[A] Lanham Act claim must be based upon a statement of fact, not of opinion."); *see also Boule v. Hutton*, 328 F.3d 84, 92 (2d Cir. 2003) ("A statement of opinion is not actionable under the Lanham Act if it 'could not reasonably be seen as stating or implying provable facts . . . .'" (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995))); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (noting that statements that are actionable under the Lanham Act must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact"). What is "unfair," "derogatory," or "disparaging" to one person may not be so to another, and these words do not themselves imply that they state an objective fact or that they are based on provable facts. These statements are, therefore, not actionable as misrepresentations of fact under the Lanham Act.

Regarding Service Jewelry's contention that the Apologies falsely label Mr. DelGiorno's

statements about Genesis as "untrue," the reference in the Apologies to the truth of Mr.

DelGiorno's statements about Genesis is too ambiguous to support a finding of literal falsity.

*See Fed. Express Corp.*, 765 F. Supp. 2d at 1018 ("[O]nly an unambiguous message can be

literally false." (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*

*Consumer Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002))).  Mr. DelGiorno apologized for

"making statements about Genesis Diamonds that [he] did not know were *untrue* or unfair."

(Docket No. 17-2 (Decl. of M. DelGiorno), Ex. 4 (emphasis added).)  It is true that a listener

could understand this language to mean that the statements about Genesis attributed to Service

Jewelry were, in fact, untrue.  A listener could also understand this language to mean, however,

that Mr. DelGiorno simply did not know whether his statements about Genesis were untrue,

whether they were only unfair, or whether they were both untrue and unfair.  Because the

language of the Apologies regarding the truth of Mr. DelGiorno's statements about Genesis is

open to multiple interpretations, the court concludes that it is ambiguous and, therefore, not

literally false.

Because all of the statements contained in the Apologies are either (1) statements of

opinion that are not actionable under the Lanham Act, or (2) statements that are ambiguous and,

therefore, not literally false, Service Jewelry cannot succeed in its Lanham Act claim by pointing

to the language of the Apologies alone.  The court will, therefore, turn to the question of whether

the ambiguous statements in the Apologies actually deceived consumers.[5]

---

[5] Cumulus cites language from Sixth Circuit case law on the standard for Lanham Act
claims that requires a plaintiff to prove that the defendant made "false or misleading statements
of fact concerning his own product or another's" and argues that the Apologies do not "fit within
the clear scope of either § 1125(a)(1)(A) or (B)," because they do not mention any "product."
(Docket No. 18, at p. 10 (quoting *Am. Council of Certified Podiatric Physicians & Surgeons*, 185
F.3d at 613).)  While the court acknowledges that *American Council of Certified Podiatric
Physicians & Surgeons* could be read to require that a false or misleading statement of fact must

**B.      Service Jewelry Has Not Established Any Actual Deception of Consumers.**

Service Jewelry argues that Cumulus portrayed it "as a deceitful jeweler that resorts to untrue and unfair advertising against its competition" (Docket No. 22, at p. 5), but Service Jewelry has failed to demonstrate that any consumer was actually deceived by the Apologies into thinking that Service Jewelry was dishonest.[6] A plaintiff bringing a claim under § 1125(a)(1)(B) "cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735 (6th Cir. 2012) (quoting *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990)). To demonstrate that consumers were actually deceived, courts typically consider evidence of

---

concern a physical product, the Sixth Circuit has never explicitly held as such; nor would such a reading comport with the plain language of § 1125(a)(1)(B), which makes actionable a defendant's statements pertaining to "his or her or another person's goods, services, *or commercial activities* . . . ." 15 U.S.C. § 1125(a)(1)(B) (emphasis added); *see also Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1267, 1271 (10th Cir. 2000) (holding that a rumor that the plaintiff was "a corporate agent of Satan" was actionable under § 1125(a)(1)(B), even though it did not concern the plaintiff's goods or services, because "the subject message clearly related to [the plaintiff's] 'commercial activities'"). The court need not decide whether statements that do not relate to goods are actionable under the Lanham Act, however, because even if they are, Service Jewelry has failed to demonstrate a genuine issue of fact as to actual deception.

[6] Service Jewelry seeks only monetary relief in this action. As discussed above, proving actual deception of consumers is an essential element of a claim for monetary damages under § 1125(a)(1)(B), where none of the alleged misrepresentations are literally false. Cumulus argues that Service Jewelry also fails to meet several other elements that the Sixth Circuit applies to *all* Lanham Act violations, specifically that Service Jewelry has not: (1) identified any witnesses who can testify that the Apologies "actually or tend[ed] to deceive a substantial portion of the intended audience;" (2) presented evidence demonstrating that the Apologies were likely to influence a "deceived consumer's purchasing decisions" and were, therefore, material statements; or (3) established a causal link between Cumulus's actions and the damages that Service Jewelry claims to have sustained. (Docket No. 18, at pp. 11–12; Docket No. 25, at p. 3.) The court need not reach the merits of these arguments, however, because the failure to prove actual deception is sufficient grounds to dismiss the only Lanham Act claim that Service Jewelry has actually brought – one seeking monetary relief under § 1125(a)(1)(B).

consumers' actual reaction, including consumer surveys or other market research.  *See Am.*

*Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 616–17.  Service Jewelry has

submitted no consumer surveys, market research, or expert testimony demonstrating that

consumers were actually deceived by the Apologies.  It has not even identified as witnesses that

it may produce at trial any consumers who could testify that they were deceived, any experts

who could testify as to reputational damages, or any financial documents that could serve as

evidence of lost revenue after the Apologies were aired.  In short, the record is devoid of any

evidence regarding consumers' actual reaction to the Apologies that could show actual

deception.  Accordingly, the court will grant summary judgment to Cumulus on the Lanham Act

claim.[7]

## II.  <u>Defamation Claim</u>

To assert a *prima facie* case of defamation in Tennessee, a plaintiff must establish that a

defendant published a statement either "with knowledge that the statement is false and

defaming," or "with reckless disregard for the truth of the statement or with negligence in failing

to ascertain the truth of the statement."  *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571

(Tenn. 1999).  In addition to these elements, the plaintiff is also required to "prove actual

damages," *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979), meaning that "the

plaintiff must show that her standing in the community and her public reputation for character

---

[7] In its briefing, Cumulus states that Service Jewelry's Lanham Act claim is "the source
of this Court's jurisdiction."  (Docket No. 18, at p. 9.)  When Cumulus removed this action from
the Circuit Court of Davidson County, Tennessee, however, it did so on the grounds of both
federal question jurisdiction *and* diversity jurisdiction.  (Docket No. 1 ¶¶ 3, 4.)  Even though the
court is granting summary judgment as to the only claim that serves as a basis for federal
question jurisdiction – the Lanham Act claim – the court will still consider Service Jewelry's
state law claims, because the court has jurisdiction over them due to the diversity of citizenship
between Service Jewelry and Cumulus.

has been injured by the alleged defamatory statement and that as a result she has suffered real or actual damages due to that loss of standing or reputation," *McLeay v. Huddleston*, No. M2005-02118-COA-R3-CV, 2006 WL 2855164, at *9 (Tenn. Ct. App. Oct. 6, 2006); *accord Murray v. Lineberry*, 69 S.W.3d 560, 564 (Tenn. Ct. App. 2001) ("When looking at damages for a defamation suit this court has stated that, '[t]he issue is whether the record contains any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering.'" (quoting *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997))).

There is a dispute of fact as to whether the Apologies contain any statement that was defamatory to Service Jewelry. The court need not reach that question, however, because Service Jewelry has failed to present any material evidence that its reputation was injured or that, as a result, it suffered real or actual damages.[8] As evidence of the injury it claims to have

---

[8] Service Jewelry contends that *Cumulus* has failed to "demonstrate [that] a lack of damages [is] undisputed," and that Cumulus's Motion for Summary Judgment as to the defamation claim should, therefore, be rejected. (Docket No. 22, at p. 7.) As Cumulus points out in its briefing, in making this argument, Service Jewelry appears to mischaracterize the burden that the defendant as movant faces at the summary judgment stage as a burden to disprove the plaintiff's claims. (*See* Docket No. 25, at p.1.) To the contrary, the defendant's burden when moving for summary judgment is simply to "inform[] the district court of the basis for its motion and identify[] portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). The plaintiffs, then, have the burden of presenting affirmative evidence that creates such a dispute of material fact. *Id.* Cumulus has informed the court of two bases for its summary judgment motion on the defamation claim: (1) that the statements were neither untrue nor defamatory and (2) that Service Jewelry has not shown that it suffered actual damages. (Docket No. 18, at pp. 15–16.) Cumulus also points to the initial disclosures, which do not identify as witnesses any consumers who could testify that they were deceived, any experts who could testify as to reputational damages, or any financial documents that could serve as evidence of lost revenue. (*See id.* at pp. 11–12, 15–16; Docket No. 25, at pp. 4–5.) It is, therefore, now Service Jewelry's burden to produce affirmative evidence that demonstrates that a genuine issue of material fact exists as to the damages it claims to have suffered.

suffered, Service Jewelry submits only the declaration of its CFO, Mr. Townsend. (Docket No. 22, at p. 7; Docket No. 22-1 (Decl. J. Townsend).) The Townsend Declaration contains just the sort of "[c]onclusory statements unadorned with supporting facts [that] are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). The Townsend Declaration states merely that Service Jewelry was "harmed," which "further led to actual financial damages," but it does not describe how Service Jewelry's reputation was impaired or to what extent, what the actual financial damages were, how they were calculated, or how those damages were caused by the loss of reputation. (*See* Docket No. 22-1 ¶¶ 3–5.) Nor can this information be found anywhere in the record – Service Jewelry has failed to introduce any specific facts supporting its claim of damages. Furthermore, based on their failure to identify any documents or witnesses related to the subject of damages, Service Jewelry's initial disclosures create a strong inference that Service Jewelry has no evidence regarding this injury that it *could* place into the record.[9]

Accordingly, the court will grant summary judgment to Cumulus on Service Jewelry's defamation claim.

### III. Claim for Violation of Section 47-18-104(b)(8) of the Tennessee Consumer Protection Act

The TCPA prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(b). Prohibited acts and practices include

---

[9] The initial disclosures list the witnesses Service Jewelry claims "have discoverable information that may support [its] claims," but that list does not include a single consumer who could testify that their purchasing decisions were affected by the Apologies or a single expert who could testify how, or to what extent, Service Jewelry's reputation was impaired. (Docket No. 17-1 (Initial Disclosures) ¶ 1.) Nor do the disclosures identify a single financial record that could be used to demonstrate the impact that the Apologies had on Service Jewelry's profits or sales. (*Id.* ¶ 2.)

"[d]isparaging the goods, services or business of another by false or misleading representations of fact." *Id.* § 47-18-104(b)(8).  Cumulus argues that the TCPA does not even apply to Service Jewelry's allegations, because "the on-air apologies did not 'criticize or disparage' the quality of Services Jewelry's goods, services, or business." (Docket No. 18, at pp. 13–14.)  At most, Cumulus asserts, Service Jewelry has alleged that the Apologies damaged its *integrity*, and the TCPA does not apply to statements that reflect only upon an entity's integrity.  (*Id.* (discussing *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818 (Tenn. 1994)).)  The court need not determine whether the TCPA actually applies to the statements in this case, however, because Service Jewelry's claim under the TCPA fails on other grounds.

Service Jewelry's claim under the TCPA fails for the same reasons that its Lanham Act and defamation claims fail – Service Jewelry has failed to produce affirmative evidence demonstrating a genuine dispute of fact as to the injury that it claims to have suffered and how that injury was caused by Cumulus's alleged misconduct.  In order to recover under the TCPA, the plaintiff must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated . . . ." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).  As discussed above, Service Jewelry has failed to introduce into the record any evidence relating to the losses that it claims Cumulus caused.  Beyond the conclusory statements in the Townsend Declaration, which are insufficient to establish a factual dispute regarding damages, the record contains no evidence supporting Service Jewelry's claim that it suffered losses of reputation, goodwill, or revenues.  Service Jewelry has, therefore, failed to demonstrate that it has suffered any injury related to its claims in

this case, and the court will grant summary judgment to Cumulus on Service Jewelry's claim under the TCPA.

## IV. <u>Breach of Contract Claim</u>

Service Jewelry's breach of contract claim is premised on its allegations that Mr. DelGiorno "materially deviated from the content called for by the parties' agreement" during his live endorsements of Service Jewelry and that, during the period covered by the contract between Service Jewelry and Cumulus, "[Cumulus] began simultaneously airing statements labeling the advertisements Service Jewelry contracted for as untrue." (Docket No. 22, at pp. 7–8 (referring to the Apologies).) To establish a breach of contract in Tennessee, a plaintiff must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract. *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011).[10]

While the parties do not appear to dispute that the Sales Order and its terms were an enforceable contract under which Cumulus would provide radio advertising to Service Jewelry, they disagree over whether the talking points given to Mr. DelGiorno at the May 6, 2014 meeting were also a part of that contract. Service Jewelry contends that the agreement was to "run radio advertising comprised of the talking points" (Docket No. 22, at p. 7), while Cumulus argues that the scope of the contract is restricted to "the Sales Order, its Standard Terms and Conditions, and the On-Air Campaign form signed by Service Jewelry representatives," and does not extend to the talking points (Docket No. 18, at p. 18). Even if the court resolves this dispute in the light

---

[10] The parties appear to agree that Tennessee law applies to the contract between them. (*See* Docket No. 18, at pp. 17–19 (applying Tennessee principles of contract law); Docket No. 22, at pp. 7–8 (same); *see also* Docket No. 17-3 (Decl. D. Elliott), Ex. 3 (providing the terms of the Sales Order, including that "[t]his agreement shall be construed under and according to the laws of the State in which the Station's main studio is located").)

most favorable to Service Jewelry and concludes that the talking points did become part of the agreement, however, Service Jewelry's breach of contract claim still fails. Service Jewelry has failed to demonstrate that Cumulus breached any term of the agreement when Mr. DelGiorno mentioned Genesis by name in several of the live endorsements or when Cumulus issued the Apologies.

Regarding whether Cumulus breached the contract when Mr. DelGiorno "materially deviated" from the talking points by mentioning Genesis by name, Service Jewelry has identified no contractual term or oral agreement providing that Mr. DelGiorno was bound *not* to mention Genesis in the live endorsements; nor does the record contain any such provision. Rather, Service Jewelry admits that at no point during the May 6, 2014 meeting did it ask Mr. DelGiorno to refrain from mentioning Genesis by name (Docket No. 23 ¶ 17), and, although the talking points do not contain Genesis's name, they also do not prohibit naming Genesis in the live endorsements.[11] The record is devoid of any evidence of a contractual term or agreement, oral or otherwise, prohibiting Mr. DelGiorno from making statements that are not contained in the talking points. His mention of Genesis in the live advertisements, therefore, did not (and could not) breach the contract between the two parties.

Service Jewelry has failed to identify any term in its contract with Cumulus that was breached when Cumulus issued the Apologies. "[I]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual

---

[11] Furthermore, a week after the advertisements began airing, Service Jewelry's CFO, Mr. Townsend, requested that Mr. DelGiono add material to the talking points. It is undisputed that, on May 12, 2014, Mr. Townsend emailed Mr. DelGiorno to request that Mr. DelGiorno "take [Genesis] completely down" after Genesis advertised that it would give a free diamond to any customer who could find a similar diamond for a cheaper price and that, soon after this request, Mr. DelGiorno began to mention Genesis by name in his live endorsements. (Docket No. 23 ¶¶ 22–23.)

terms of the contract allegedly breached." *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (quoting *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 WL 993882, at *4–5 (6th Cir. Oct. 19, 1999) (per curiam) (unpublished)). Service Jewelry and Cumulus agreed that Cumulus would air a set number of pre-recorded advertisements and live endorsements on certain days for a limited period of time, as evidenced in the Sales Order. Nothing in the Sales Order, Cumulus's Standard Terms and Conditions, the On-Air Campaign form, or even the discussions between the parties, contemplates or imposes any obligation on Cumulus regarding the content that it chooses to air outside of the advertising for which Service Jewelry contracted. Nor does Service Jewelry identify any term or provision that could reach such content.[12] Service Jewelry has, therefore, failed – as a matter of law – to demonstrate that Cumulus's conduct could be found to constitute nonperformance or breach of the contract.

Accordingly, the court will grant summary judgment to Cumulus on Service Jewelry's breach of contract claim.

---

[12] The court notes that, while nothing in the record supports a conclusion that Cumulus failed to perform the agreement, neither party has addressed whether the record contains evidence demonstrating that Cumulus breached the implied duty of good faith and fair dealing that Tennessee law imposes on the performance of every contract. *See Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). Service Jewelry has never advanced breach of the implied duty of good faith and fair dealing as a basis or theory for its claim of breach of contract – not in the Complaint, its Response to Cumulus's Motion for Summary Judgment, or any other filing. (*See* Docket No. 9 ¶ 31 ("Cumulus' actions taken pursuant to the contract were so far in variance to the terms requested as to constitute nonperformance."); Docket No. 22, at pp. 7–8 (arguing that Cumulus's conduct "constitutes nonperformance and breach of the contract").) Even if it were possible to interpret the evidence in the record to raise a dispute of fact as to whether Cumulus breached its duty of good faith and fair dealing, it would be manifestly unfair to Cumulus to allow Service Jewelry to proceed to trial on a theory that it has failed to articulate in pleadings and at summary judgment.

## CONCLUSION

For the reasons discussed herein, Cumulus's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge